1  LYNN HUBBARD, III, SBN 69773
2  **DISABLED ADVOCACY GROUP, APLC**
   12 Williamsburg Lane
3  Chico, CA 95926
   Telephone: (530) 895-3252
4  Facsimile: (530) 894-8244
   Email: USDCCentral@HubsLaw.com
5
6  Attorneys for Plaintiff

```
          FILED
CLERK, U.S. DISTRICT COURT

        JAN 2 8 20..

CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION      BY DEPUTY
```

7
8
9              UNITED STATES DISTRICT COURT
10             CENTRAL DISTRICT OF CALIFORNIA
11
               **CV 11 - 00900** JFW (AGR)
12 SANDI RUSH,                    No.
13       Plaintiff,
                                  **Plaintiff's Complaint**
14       vs.
15 VILLAGE WALK RETAIL, LP;
16 VILLAGE RUN RETAIL, LP; TSA
   STORES, INC. dba SPORTS
17 AUTHORITY #651; OFFICE
   DEPOT, INC. dba OFFICE DEPOT
18 #2371; GUITAR CENTER
19 STORES, INC. dba GUITAR
   CENTER #127; BED BATH &
20 BEYOND OF CALIFORNIA, LLC
21 dba BED BATH & BEYOND
   #1097; TOYS 'R' US –
22 DELAWARE, INC. dba BABIES
23 'R' US,
24       Defendants.
25
26
27
28

*Rush v. Village Walk Retail, LP, et al.*
Plaintiff's Complaint

Page 1

I.   SUMMARY

1.   This is a civil rights action by plaintiff Sandi Rush ("Rush") for discrimination at the building, structure, facility, complex, property, land, development, and/or surrounding business complexes known as:

Sports Authority #651
24490 Village Walk Place
Murrieta, California 92562
(hereafter "the Sports Authority Facility")

Office Depot #2371
24500 Village Walk Place
Murrieta, California 92562
(hereafter "the Office Depot Facility")

Guitar Center #127
24370 Village Walk Place
Murrieta, California 92562
(hereafter "the Guitar Center Facility")

Bed Bath & Beyond #1097
24450 Village Walk Place
Murrieta, California 92562
(hereafter "the Bed Bath & Beyond Facility")

Babies 'r' Us
24440 Village Walk Place
Murrieta, California 92562
(hereafter "the Babies 'r' Us Facility")

(collectively, "the Facilities").

2.   Pursuant to the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12101 et seq.), and related California statutes, Rush seeks damages, injunctive and declaratory relief, and attorney fees and costs, against:

1     • TSA Stores, Inc. dba Sports Authority #651; Village Walk Retail, LP; and,

2     Village Run Retail, LP (hereinafter the "Sports Authority Defendants");

3     • Office Depot, Inc. dba Office Depot #2371; Village Walk Retail, LP; and,

4     Village Run Retail, LP (hereinafter the "Office Depot Defendants");

5     • Guitar Center Stores, Inc. dba Guitar Center #127; Village Walk Retail,

6     LP; and, Village Run Retail, LP (hereinafter the "Guitar Center

7     Defendants");

8     • Bed Bath & Beyond of California, LLC dba Bed Bath & Beyond #1097;

9     Village Walk Retail, LP; and, Village Run Retail, LP (hereinafter the "Bed

10     Bath & Beyond Defendants"); and,

11     • Toys 'r' Us – Delaware, Inc. dba Babies 'r' Us; Village Walk Retail, LP;

12     and, Village Run Retail, LP (hereinafter the "Babies 'r' Us Defendants").

13                           II.     JURISDICTION

14       3.     This Court has original jurisdiction under 28 U.S.C. §§ 1331 and

15 1343 for ADA claims.

16       4.     Supplemental jurisdiction for claims brought under parallel

17 California law—arising from the same nucleus of operative facts—is predicated

18 on 28 U.S.C. § 1367.

19       5.     Rush's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

20                           III.     VENUE

21       6.     All actions complained of herein take place within the jurisdiction

22 of the United States District Court, Central District of California, and venue is

23 invoked pursuant to 28 U.S.C. § 1391(b), (c).

24                           IV.     PARTIES

25       7.     The Sports Authority Defendants own, operate, manage, and/or

26 lease the Sports Authority Facility, and consist of a person (or persons), firm,

27 and/or corporation.

28

8.     The Office Depot Defendants own, operate, manage, and/or lease the Office Depot Facility, and consist of a person (or persons), firm, and/or corporation.

9.     The Guitar Center Defendants own, operate, manage, and/or lease the Guitar Center Facility, and consist of a person (or persons), firm, and/or corporation.

10.    The Bed Bath & Beyond Defendants own, operate, manage, and/or lease the Bed Bath & Beyond Facility, and consist of a person (or persons), firm, and/or corporation.

11.    The Babies 'r' Us Defendants own, operate, manage, and/or lease the Babies 'r' Us Facility, and consist of a person (or persons), firm, and/or corporation.

12.    Rush is a paraplegic who is unable to walk or stand, and requires the use of a wheelchair when traveling about in public. Consequently, Rush is "physically disabled," as defined by all applicable California and United States laws, and a member of the public whose rights are protected by these laws.

## V.     FACTS

13.    The Sports Authority Facility is a sales or retail establishment, open to the public, which is intended for nonresidential use and whose operation affects commerce.

14.    The Office Depot Facility is a sales or retail establishment, open to the public, which is intended for nonresidential use and whose operation affects commerce.

15.    The Guitar Center Facility is a sales or retail establishment, open to the public, which is intended for nonresidential use and whose operation affects commerce.

*Rush v. Village Walk Retail, LP, et al.*
Plaintiff's Complaint

16.   The Bed Bath & Beyond Facility is a sales or retail establishment, open to the public, which is intended for nonresidential use and whose operation affects commerce.

17.   The Babies 'r' Us Facility is a sales or retail establishment, open to the public, which is intended for nonresidential use and whose operation affects commerce.

18.   Rush visited these facilities and encountered barriers (both physical and intangible) that interfered with—if not outright denied—his ability to use and enjoy the goods, services, privileges, and accommodations offered at all of the facilities.

19.   To the extent known by Rush, the barriers at the Sports Authority Facility included, but are not limited to, the following:

- The signage at the van accessible parking space is incorrect. Without correct signage, Rush cannot determine which spaces are intended for vans;

- The slopes and cross slopes of multiple disabled parking spaces exceed 2.0%. Without a level parking space, Rush has a difficult time transferring from her vehicle into her wheelchair;

- The slopes and cross slopes of multiple access aisles exceed 2.0%. Without a level access aisle, Rush has a difficult time transferring from her vehicle to her wheelchair;

- The dressing room bench is not 24 inches wide by 48 inches long, thus preventing Rush from making a diagonal transfer from her wheelchair;

- The coat hooks in the dressing room are mounted too high, making them difficult, if not impossible, for Rush to reach and use;

- There is no handle mounted below the water closet stall door, making it difficult for Rush to completely and properly close;

- The toilet tissue dispenser protrudes into the clear floor and/or maneuvering space required to access the water closet. Without this space, Rush has a difficult time transferring from her wheelchair to the water closet;

- The front roll of toilet tissue is more than 12 inches from the front of the water closet, making it difficult, if not impossible, for Rush to reach and use;

- The toilet tissue dispenser obstructs the use of the side grab bar. Without the full use of this bar, it is difficult for Rush to transfer from her wheelchair to the water closet;

- The soap dispenser is mounted too high, making it difficult, if not impossible, for Rush to reach and use;

- The pipes beneath the lavatories are not completely wrapped, thus causing Rush to risk being burned when using;.

These barriers prevented Rush from enjoying full and equal access at the Sports Authority Facility.

20.    Rush was also deterred from visiting the Sports Authority Facility because she knew that the Sports Authority Facility's goods, services, facilities, privileges, advantages, and accommodations were unavailable to physically disabled patrons (such as herself). She continues to be deterred from visiting the Sports Authority Facility because of the future threats of injury created by these barriers.

21.    To the extent known by Rush, the barriers at the Office Depot Facility included, but are not limited to, the following:

- The signage at the van accessible parking space is incorrect. Without correct signage, Rush cannot determine which spaces are intended for vans;

*Rush v. Village Walk Retail, LP, et al.*
Plaintiff's Complaint

Page 6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- The slopes and cross slopes of multiple disabled parking spaces exceed 2.0%. Without a level parking space, Rush has a difficult time transferring from her vehicle into her wheelchair;

- The slopes and cross slopes of multiple access aisles exceed 2.0%. Without a level access aisle, Rush has a difficult time transferring from her vehicle to her wheelchair;

- The slope of the accessible route from the disabled parking to the entrance exceeds 2.0% (with no handrails), making it difficult for Rush to traverse;

- There is no International Symbol of Accessibility ("ISA") mounted at the entrance to indicate to Rush whether the facility is intended to be accessible to the disabled;

- The water closet is an obstruction to the use of the disposable seat cover dispenser, making it difficult, if not impossible, for Rush to reach and use;

- The toilet tissue dispenser protrudes into the clear floor and/or maneuvering space required to access the water closet. Without this space, Rush has a difficult time transferring from her wheelchair to the water closet;

- The toilet tissue dispenser obstructs the use of the side grab bar. Without the full use of this bar, it is difficult for Rush to transfer from her wheelchair to the water closet;

- The pipes beneath the lavatory are not completely wrapped, causing Rush to risk burning herself when using;

- The waste receptacle is an obstruction to the use of the paper towel dispenser, making it difficult, if not impossible, for Rush to reach and use;

*Rush v. Village Walk Retail, LP, et al.*
Plaintiff's Complaint

1        • There is insufficient strike side clearance when exiting the restroom,

2          making it difficult for Rush to pull open the door.

3      These barriers prevented Rush from enjoying full and equal access at the

4   Office Depot Facility.

5      22.    Rush was also deterred from visiting the Office Depot Facility

6   because she knew that the Office Depot Facility's goods, services, facilities,

7   privileges, advantages, and accommodations were unavailable to physically

8   disabled patrons (such as himself). She continues to be deterred from visiting the

9   Office Depot Facility because of the future threats of injury created by these

10  barriers.

11     23.    To the extent known by Rush, the barriers at the Guitar Center

12  Facility included, but are not limited to, the following:

13       • The signage at the van accessible parking space is incorrect.

14          Without correct signage, Rush cannot determine which spaces are

15          intended for vans;

16       • The slopes and cross slopes of multiple disabled parking spaces

17          exceed 2.0%. Without a level parking space, Rush has a difficult

18          time transferring from her vehicle into her wheelchair;

19       • The slopes and cross slopes of multiple access aisles exceed 2.0%.

20          Without a level access aisle, Rush has a difficult time transferring

21          from her vehicle to her wheelchair;

22       • The toilet tissue dispenser protrudes into the clear floor and/or

23          maneuvering space required to access the water closet. Without this

24          space, Rush has a difficult time transferring from her wheelchair to

25          the water closet;

26       • The front roll of toilet tissue is more than 12 inches from the front

27          of the water closet, making it difficult, if not impossible, for Rush

28          to reach and use;

*Rush v. Village Walk Retail, LP, et al.*
Plaintiff's Complaint

- The toilet tissue dispenser obstructs the use of the side grab bar. Without the full use of this bar, it is difficult for Rush to transfer from her wheelchair to the water closet;

- The toilet tissue dispenser contains sharp edges, thereby causing Rush to risk injury when using it;

- The disposable seat cover dispenser is mounted too high, making it difficult, if not impossible, for Rush to reach and use;

- The water closet is an obstruction to the disposable seat cover dispenser, making the dispenser difficult, if not impossible, to reach and use;

- Due to its location above and behind the water closet, the disposable seat cover dispenser is outside of the required reach range limits, making it difficult, if not impossible, to reach and use;

- The soap dispenser is mounted too high, making it difficult, if not impossible, for Rush to reach and use;.

These barriers prevented Rush from enjoying full and equal access at the Guitar Center Facility.

24.    Rush was also deterred from visiting the Guitar Center Facility because she knew that the Guitar Center Facility's goods, services, facilities, privileges, advantages, and accommodations were unavailable to physically disabled patrons (such as himself). She continues to be deterred from visiting the Guitar Center Facility because of the future threats of injury created by these barriers.

25.    To the extent known by Rush, the barriers at the Bed Bath & Beyond Facility included, but are not limited to, the following:

- The signage at the van accessible parking space is incorrect. Without correct signage, Rush cannot determine which spaces are intended for vans;

*Rush v. Village Walk Retail, LP, et al.*
Plaintiff's Complaint

- The slopes and cross slopes of multiple disabled parking spaces exceed 2.0%. Without a level parking space, Rush has a difficult time transferring from her vehicle into her wheelchair;
- The slopes and cross slopes of multiple access aisles exceed 2.0%. Without a level access aisle, Rush has a difficult time transferring from her vehicle to her wheelchair;
- The signage on the restroom door is incorrect, thus making it difficult for Rush to determine if the restroom is intended to be accessible to the disabled;
- There is insufficient strike side clearance when entering the restroom, thus causing Rush difficulty in pulling open the door;
- The pipes beneath the lavatories are not completely wrapped, thereby causing Rush to risk being burned when using them;
- The waste receptacle is an obstruction to the use of the paper towel dispenser, making the dispenser difficult for Rush to reach and use; and,
- There is insufficient strike side clearance when exiting the restroom, thus causing Rush difficulty in pushing open the door.

These barriers prevented Rush from enjoying full and equal access at the Bed Bath & Beyond Facility.

26.    Rush was also deterred from visiting the Bed Bath & Beyond Facility because she knew that the Bed Bath & Beyond Facility's goods, services, facilities, privileges, advantages, and accommodations were unavailable to physically disabled patrons (such as himself). She continues to be deterred from visiting the Bed Bath & Beyond Facility because of the future threats of injury created by these barriers.

*Rush v. Village Walk Retail, LP, et al.*
Plaintiff's Complaint

Page 10

27.   To the extent known by Rush, the barriers at the Babies 'r' Us Facility included, but are not limited to, the following:

- The signage at the van accessible parking space is incorrect. Without correct signage, Rush cannot determine which spaces are intended for vans;

- The slopes and cross slopes of multiple disabled parking spaces exceed 2.0%. Without a level parking space, Rush has a difficult time transferring from her vehicle into her wheelchair;

- The slopes and cross slopes of multiple access aisles exceed 2.0%. Without a level access aisle, Rush has a difficult time transferring from her vehicle to her wheelchair;

- The handle on the interior of the water closet stall door is not mounted below the lock, thus making it difficult for Rush to completely and properly close;

- The toilet tissue dispenser protrudes into the clear floor and/or maneuvering space required to access the water closet. Without this space, Rush has a difficult time transferring from her wheelchair to the water closet;

- The front roll of toilet tissue is more than 12 inches from the front of the water closet, making it difficult, if not impossible, for Rush to reach and use;

- The toilet tissue dispenser obstructs the use of the side grab bar. Without the full use of this bar, it is difficult for Rush to transfer from her wheelchair to the water closet;

- The pipes beneath the lavatories are not completely wrapped, causing Rush to risk being burned when using them; and,

- There is insufficient strike side clearance when exiting the restroom, thereby making it difficult for Rush to pull open the door.

*Rush v. Village Walk Retail, LP, et al.*
Plaintiff's Complaint

1    These barriers prevented Rush from enjoying full and equal access at the
2 Babies 'r' Us Facility.

3    28.   Rush was also deterred from visiting the Babies 'r' Us Facility
4 because she knew that the Babies 'r' Us Facility's goods, services, facilities,
5 privileges, advantages, and accommodations were unavailable to physically
6 disabled patrons (such as himself). She continues to be deterred from visiting the
7 Babies 'r' Us Facility because of the future threats of injury created by these
8 barriers.

9    29.   Rush also encountered barriers at the various facilities which violate
10 state and federal law, but were unrelated to her disability. Nothing within this
11 Complaint, however, should be construed as an allegation that Rush is seeking to
12 remove barriers unrelated to his disability.

13    30.   The Sports Authority Defendants knew that these elements and
14 areas of the Sports Authority Facility were inaccessible, violate state and federal
15 law, and interfere with (or deny) access to the physically disabled. Moreover,
16 the Sports Authority Defendants have the financial resources to remove these
17 barriers from the Sports Authority Facility (without much difficulty or expense),
18 and make the Sports Authority Facility accessible to the physically disabled. To
19 date, however, the Sports Authority Defendants refuse to either remove those
20 barriers or seek an unreasonable hardship exemption to excuse non-compliance.

21    31.   At all relevant times, the Sports Authority Defendants have
22 possessed and enjoyed sufficient control and authority to modify the Sports
23 Authority Facility to remove impediments to wheelchair access and to comply
24 with the Americans with Disabilities Act Accessibility Guidelines and Title 24
25 regulations.   The Sports Authority Defendants have not removed such
26 impediments and have not modified the Sports Authority Facility to conform to
27 accessibility standards.   The Sports Authority Defendants have intentionally
28 maintained the Sports Authority Facility in its current condition and have

*Rush v. Village Walk Retail, LP, et al.*
Plaintiff's Complaint

1   intentionally refrained from altering Sports Authority Facility so that it complies
2   with the accessibility standards.

3       32.    Rush further alleges that the (continued) presence of barriers at the
4   Sports Authority Facility is so obvious as to establish the Sports Authority
5   Defendants' discriminatory intent. On information and belief, Rush avers that
6   evidence of the discriminatory intent includes the Sports Authority Defendants'
7   refusal to adhere to relevant building standards; disregard for the building plans
8   and permits issued for the Sports Authority Facility; conscientious decision to
9   the architectural layout (as it currently exists) at the Sports Authority Facility;
10  decision not to remove barriers from the Sports Authority Facility; and
11  allowance that the Sports Authority Facility continues to exist in its non-
12  compliant state. Rush further alleges, on information and belief, that the Sports
13  Authority Defendants are not in the midst of a remodel, and that the barriers
14  present at the Sports Authority Facility are not isolated (or temporary)
15  interruptions in access due to maintenance or repairs.[1]

16      33.    The Office Depot Defendants knew that these elements and areas of
17  the Office Depot Facility were inaccessible, violate state and federal law, and
18  interfere with (or deny) access to the physically disabled. Moreover, the Office
19  Depot Defendants have the financial resources to remove these barriers from the
20  Office Depot Facility (without much difficulty or expense), and make the Office
21  Depot Facility accessible to the physically disabled. To date, however, the
22  Office Depot Defendants refuse to either remove those barriers or seek an
23  unreasonable hardship exemption to excuse non-compliance.

24      34.    At all relevant times, the Office Depot Defendants have possessed
25  and enjoyed sufficient control and authority to modify the Office Depot Facility
26  to remove impediments to wheelchair access and to comply with the Americans
27
28

---

[1]    Id.; 28 C.F.R. § 36.211(b)
*Rush v. Village Walk Retail, LP, et al.*
Plaintiff's Complaint

1   with Disabilities Act Accessibility Guidelines and Title 24 regulations. The
2   Office Depot Defendants have not removed such impediments and have not
3   modified the Office Depot Facility to conform to accessibility standards. The
4   Office Depot Defendants have intentionally maintained the Office Depot Facility
5   in its current condition and have intentionally refrained from altering the Office
6   Depot Facility so that it complies with the accessibility standards.

7          35.    Rush further alleges that the (continued) presence of barriers at the
8   Office Depot Facility is so obvious as to establish the Office Depot Defendants'
9   discriminatory intent. On information and belief, Rush avers that evidence of the
10  discriminatory intent includes the Office Depot Defendants' refusal to adhere to
11  relevant building standards; disregard for the building plans and permits issued
12  for the Office Depot Facility; conscientious decision to the architectural layout
13  (as it currently exists) at the Office Depot Facility; decision not to remove
14  barriers from the Office Depot Facility; and allowance that the Office Depot
15  Facility continues to exist in its non-compliant state.  Rush further alleges, on
16  information and belief, that the Office Depot Defendants are not in the midst of a
17  remodel, and that the barriers present at the Office Depot Facility are not isolated
18  (or temporary) interruptions in access due to maintenance or repairs.[2]

19         36.    The Guitar Center Defendants knew that these elements and areas of
20  the Guitar Center Facility were inaccessible, violate state and federal law, and
21  interfere with (or deny) access to the physically disabled. Moreover, the Guitar
22  Center Defendants have the financial resources to remove these barriers from the
23  Guitar Center Facility (without much difficulty or expense), and make the Guitar
24  Center Facility accessible to the physically disabled.  To date, however, the
25  Guitar Center Defendants refuse to either remove those barriers or seek an
26  unreasonable hardship exemption to excuse non-compliance.

27

28
─────────────────────
[2]   Id.; 28 C.F.R. § 36.211(b)
*Rush v. Village Walk Retail, LP, et al.*
Plaintiff's Complaint

37.   At all relevant times, the Guitar Center Defendants have possessed and enjoyed sufficient control and authority to modify the Guitar Center Facility to remove impediments to wheelchair access and to comply with the Americans with Disabilities Act Accessibility Guidelines and Title 24 regulations.   The Guitar Center Defendants have not removed such impediments and have not modified the Guitar Center Facility to conform to accessibility standards.   The Guitar Center Defendants have intentionally maintained the Guitar Center Facility in its current condition and have intentionally refrained from altering the Guitar Center Facility so that it complies with the accessibility standards.

38.   Rush further alleges that the (continued) presence of barriers at the Guitar Center Facility is so obvious as to establish the Guitar Center Defendants' discriminatory intent. On information and belief, Rush avers that evidence of the discriminatory intent includes the Guitar Center Defendants' refusal to adhere to relevant building standards; disregard for the building plans and permits issued for the Guitar Center Facility; conscientious decision to the architectural layout (as it currently exists) at the Guitar Center Facility; decision not to remove barriers from the Guitar Center Facility; and allowance that the Guitar Center Facility continues to exist in its non-compliant state.   Rush further alleges, on information and belief, that the Guitar Center Defendants are not in the midst of a remodel, and that the barriers present at the Guitar Center Facility are not isolated (or temporary) interruptions in access due to maintenance or repairs.[3]

39.   The Bed Bath & Beyond Defendants knew that these elements and areas of the Bed Bath & Beyond Facility were inaccessible, violate state and federal law, and interfere with (or deny) access to the physically disabled. Moreover, the Bed Bath & Beyond Defendants have the financial resources to remove these barriers from the Bed Bath & Beyond Facility (without much

---

[3]   Id.; 28 C.F.R. § 36.211(b)
*Rush v. Village Walk Retail, LP, et al.*
Plaintiff's Complaint

difficulty or expense), and make the Bed Bath & Beyond Facility accessible to the physically disabled. To date, however, the Bed Bath & Beyond Defendants refuse to either remove those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

40.   At all relevant times, the Bed Bath & Beyond Defendants have possessed and enjoyed sufficient control and authority to modify the Bed Bath & Beyond Facility to remove impediments to wheelchair access and to comply with the Americans with Disabilities Act Accessibility Guidelines and Title 24 regulations.   The Bed Bath & Beyond Defendants have not removed such impediments and have not modified the Bed Bath & Beyond Facility to conform to accessibility standards.   The Bed Bath & Beyond Defendants have intentionally maintained the Bed Bath & Beyond Facility in its current condition and have intentionally refrained from altering the Bed Bath & Beyond Facility so that it complies with the accessibility standards.

41.   Rush further alleges that the (continued) presence of barriers at the Bed Bath & Beyond Facility is so obvious as to establish the Bed Bath & Beyond Defendants' discriminatory intent. On information and belief, Rush avers that evidence of the discriminatory intent includes the Bed Bath & Beyond Defendants' refusal to adhere to relevant building standards; disregard for the building plans and permits issued for the Bed Bath & Beyond Facility; conscientious decision to the architectural layout (as it currently exists) at the Bed Bath & Beyond Facility; decision not to remove barriers from the Bed Bath & Beyond Facility; and allowance that the Bed Bath & Beyond Facility continues to exist in its non-compliant state.   Rush further alleges, on information and belief, that the Bed Bath & Beyond Defendants are not in the midst of a remodel, and that the barriers present at the Bed Bath & Beyond

*Rush v. Village Walk Retail, LP, et al.*
Plaintiff's Complaint

Page 16

1   Facility are not isolated (or temporary) interruptions in access due to
2   maintenance or repairs.[4]

3        42.    The Babies 'r' Us Defendants knew that these elements and areas of
4   the Babies 'r' Us Facility were inaccessible, violate state and federal law, and
5   interfere with (or deny) access to the physically disabled.  Moreover, the Babies
6   'r' Us Defendants have the financial resources to remove these barriers from the
7   Babies 'r' Us Facility (without much difficulty or expense), and make the Babies
8   'r' Us Facility accessible to the physically disabled.   To date, however, the
9   Babies 'r' Us Defendants refuse to either remove those barriers or seek an
10  unreasonable hardship exemption to excuse non-compliance.

11       43.    At all relevant times, the Babies 'r' Us Defendants have possessed
12  and enjoyed sufficient control and authority to modify the Babies 'r' Us Facility
13  to remove impediments to wheelchair access and to comply with the Americans
14  with Disabilities Act Accessibility Guidelines and Title 24 regulations.  The
15  Babies 'r' Us Defendants have not removed such impediments and have not
16  modified the Babies 'r' Us Facility to conform to accessibility standards.  The
17  Babies 'r' Us Defendants have intentionally maintained the Babies 'r' Us Facility
18  in its current condition and have intentionally refrained from altering the Babies
19  'r' Us Facility so that it complies with the accessibility standards.

20       44.    Rush further alleges that the (continued) presence of barriers at the
21  Babies 'r' Us Facility is so obvious as to establish the Babies 'r' Us Defendants'
22  discriminatory intent. On information and belief, Rush avers that evidence of the
23  discriminatory intent includes the Babies 'r' Us Defendants' refusal to adhere to
24  relevant building standards; disregard for the building plans and permits issued
25  for the Babies 'r' Us Facility; conscientious decision to the architectural layout
26  (as it currently exists) at the Babies 'r' Us Facility; decision not to remove

27

28

---

[4]   Id.; 28 C.F.R. § 36.211(b)
*Rush v. Village Walk Retail, LP, et al.*
Plaintiff's Complaint

1   barriers from the Babies 'r' Us Facility; and allowance that the Babies 'r' Us
2   Facility continues to exist in its non-compliant state.   Rush further alleges, on
3   information and belief, that the Babies 'r' Us Defendants is not in the midst of a
4   remodel, and that the barriers present at the Babies 'r' Us Facility are not isolated
5   (or temporary) interruptions in access due to maintenance or repairs.[5]

## VI.   FIRST CLAIM

### Americans with Disabilities Act of 1990

Denial of "Full and Equal" Enjoyment and Use

(The Sports Authority Facility)

10   45.   Rush incorporates the allegations contained in paragraphs 1 through
11   44 for this claim.

12   46.   Title III of the ADA holds as a "general rule" that no individual
13   shall be discriminated against on the basis of disability in the full and equal
14   enjoyment (or use) of goods, services, facilities, privileges, and accommodations
15   offered by any person who owns, operates, or leases a place of public
16   accommodation. 42 U.S.C. § 12182(a).

17   47.   The Sports Authority Defendants discriminated against Rush by
18   denying "full and equal enjoyment" and use of the goods, services, facilities,
19   privileges or accommodations of the Sports Authority Facility during each visit
20   and each incident of deterrence.

Failure to Remove Architectural Barriers in an Existing Facility

22   48.   The ADA specifically prohibits failing to remove architectural
23   barriers, which are structural in nature, in existing facilities where such removal
24   is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv).   The term "readily
25   achievable" is defined as "easily accomplishable and able to be carried out
26   without much difficulty or expense." Id. § 12181(9).

27

28

---

[5]   Id.; 28 C.F.R. § 36.211(b)
*Rush v. Village Walk Retail, LP, et al.*
Plaintiff's Complaint

49.   When an entity can demonstrate that removal of a barrier is not readily achievable, a failure to make goods, services, facilities, or accommodations available through alternative methods is also specifically prohibited if these methods are readily achievable. Id. § 12182(b)(2)(A)(v).

50.   Here, Rush alleges that the Sports Authority Defendants can easily remove the architectural barriers at the Sports Authority Facility without much difficulty or expense, and that the Sports Authority Defendants violated the ADA by failing to remove those barriers, when it was readily achievable to do so.

51.   In the alternative, if it was not "readily achievable" for Sports Authority Defendants to remove the Sports Authority Facility's barriers, then the Sports Authority Defendants violated the ADA by failing to make the required services available through alternative methods, which are readily achievable.

### Failure to Design and Construct an Accessible Facility

52.   On information and belief, the Sports Authority Facility was designed or constructed (or both) after January 26, 1992—independently triggering access requirements under Title III of the ADA.

53.   The ADA also prohibits designing and constructing facilities for first occupancy after January 26, 1993, that aren't readily accessible to, and usable by, individuals with disabilities when it was structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

54.   Here, the Sports Authority Defendants violated the ADA by designing or constructing (or both) the Sports Authority Facility in a manner that was not readily accessible to the physically disabled public—including Rush—when it was structurally practical to do so.[6]

---

[6]   Nothing within this Complaint should be construed as an allegation that plaintiff is bringing this action as a private attorney general under either state or federal statutes.

*Rush v. Village Walk Retail, LP, et al.*
Plaintiff's Complaint

1

### Failure to Make an Altered Facility Accessible

2     55.    On information and belief, the Sports Authority Facility was
3 modified after January 26, 1992, independently triggering access requirements
4 under the ADA.

5     56.    The ADA also requires that facilities altered in a manner that affects
6 (or could affect) its usability must be made readily accessible to individuals with
7 disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2).  Altering
8 an area that contains a facility's primary function also requires adding making
9 the paths of travel, bathrooms, telephones, and drinking fountains serving that
10 area accessible to the maximum extent feasible. Id.

11     57.    Here, the Sports Authority Defendants altered the Sports Authority
12 Facility in a manner that violated the ADA and was not readily accessible to the
13 physically disabled public—including Rush—to the maximum extent feasible.

14

### Failure to Modify Existing Policies and Procedures

15     58.    The ADA also requires reasonable modifications in policies,
16 practices, or procedures, when necessary to afford such goods, services,
17 facilities, or accommodations to individuals with disabilities, unless the entity
18 can demonstrate that making such modifications would fundamentally alter their
19 nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

20     59.    Here, the Sports Authority Defendants violated the ADA by failing
21 to make reasonable modifications in policies, practices, or procedures at the
22 Sports Authority Facility, when these modifications were necessary to afford
23 (and would not fundamentally alter the nature of) these goods, services,
24 facilities, or accommodations.

25     60.    Rush seeks all relief available under the ADA (*i.e.*, injunctive relief,
26 attorney fees, costs, legal expense) for these aforementioned violations. 42
27 U.S.C. § 12205.

28

*Rush v. Village Walk Retail, LP, et al.*
Plaintiff's Complaint

61.   Rush also seeks a finding from this Court (*i.e.,* declaratory relief) that the Sports Authority Defendants violated the ADA in order to pursue damages under California's Unruh Civil Rights Act or Disabled Persons Act.

## VII.   SECOND CLAIM

### Disabled Persons Act

(The Sports Authority Facility)

62.   Rush incorporates the allegations contained in paragraphs 1 through 44 for this claim.

63.   California Civil Code § 54 states, in part, that: Individuals with disabilities have the same right as the general public to the full and free use of the streets, sidewalks, walkways, public buildings and facilities, and other public places.

64.   California Civil Code § 54.1 also states, in part, that: Individuals with disabilities shall be entitled to full and equal access to accommodations, facilities, telephone facilities, places of public accommodation, and other places to which the general public is invited.

65.   Both sections specifically incorporate (by reference) an individual's rights under the ADA. See Civil Code §§ 54(c) and 54.1(d).

66.   Here, the Sports Authority Defendants discriminated against the physically disabled public—including Rush—by denying them full and equal access to the Sports Authority Facility.  The Sports Authority Defendants also violated Rush's rights under the ADA, and, therefore, infringed upon or violated (or both) Rush's rights under the Disabled Persons Act.

67.   For each offense of the Disabled Persons Act, Rush seeks actual damages (both general and special damages), statutory minimum damages of one thousand dollars ($1,000), declaratory relief, and any other remedy available under California Civil Code § 54.3.

1    68.    She also seeks to enjoin the Sports Authority Defendants from

2    violating the Disabled Persons Act (and ADA) under California Civil Code § 55,

3    and to recover reasonable attorneys' fees and incurred under California Civil

4    Code §§ 54.3 and 55.

5                           VIII.  THIRD CLAIM

6                          **Unruh Civil Rights Act**

7                          (The Sports Authority Facility)

8    69.    Rush incorporates the allegations contained in paragraphs 1 through

9    44 for this claim.

10   70.    California Civil Code § 51 states, in part, that: All persons within

11   the jurisdiction of this state are entitled to the full and equal accommodations,

12   advantages, facilities, privileges, or services in all business establishments of

13   every kind whatsoever.

14   71.    California Civil Code § 51.5 also states, in part, that: No business

15   establishment of any kind whatsoever shall discriminate against any person in

16   this state because of the disability of the person.

17   72.    California Civil Code § 51(f) specifically incorporates (by

18   reference) an individual's rights under the ADA into the Unruh Act.

19   73.    The Sports Authority Defendants' aforementioned acts and

20   omissions denied the physically disabled public—including Rush—full and

21   equal accommodations, advantages, facilities, privileges and services in a

22   business establishment (because of their physical disability).

23   74.    These acts and omissions (including the ones that violate the ADA)

24   denied, aided or incited a denial, or discriminated against Rush by violating the

25   Unruh Act.

26   75.    Rush was damaged by the Sports Authority Defendants' wrongful

27   conduct, and seeks statutory minimum damages of four thousand dollars

28   ($4,000) <u>for each offense</u>.

*Rush v. Village Walk Retail, LP, et al.*
Plaintiff's Complaint

Page 22

76.   Rush also seeks to enjoin the Sports Authority Defendants from violating the Unruh Act (and ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code § 52(a).

## IX.   FOURTH CLAIM

### Denial of Full and Equal Access to Public Facilities

(The Sports Authority Facility)

77.   Rush incorporates the allegations contained in paragraphs 1 through 44 for this claim.

78.   Health and Safety Code § 19955(a) states, in part, that: California public accommodations or facilities (built with private funds) shall adhere to the provisions of Government Code § 4450.

79.   Health and Safety Code § 19959 states, in part, that: Every existing (non-exempt) public accommodation constructed prior to July 1, 1970, which is altered or structurally repaired, is required to comply with this chapter.

80.   Rush alleges the Sports Authority Facility is a public accommodation constructed, altered, or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code § 4450 (or both), and that the Sports Authority Facility was not exempt under Health and Safety Code § 19956.

81.   The Sports Authority Defendants' non-compliance with these requirements at the Sports Authority Facility aggrieved (or potentially aggrieved) Rush and other persons with physical disabilities.   Accordingly, she seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

*Rush v. Village Walk Retail, LP, et al.*
Plaintiff's Complaint

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## X.   FIFTH CLAIM

### Americans with Disabilities Act of 1990

### Denial of "Full and Equal" Enjoyment and Use

(The Office Depot Facility)

82.   Rush incorporates the allegations contained in paragraphs 1 through 44 for this claim.

83.   Title III of the ADA holds as a "general rule" that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment (or use) of goods, services, facilities, privileges, and accommodations offered by any person who owns, operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

84.   The Office Depot Defendants discriminated against Rush by denying "full and equal enjoyment" and use of the goods, services, facilities, privileges or accommodations of the Office Depot Facility during each visit and each incident of deterrence.

### Failure to Remove Architectural Barriers in an Existing Facility

85.   The ADA specifically prohibits failing to remove architectural barriers, which are structural in nature, in existing facilities where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv).   The term "readily achievable" is defined as "easily accomplishable and able to be carried out without much difficulty or expense." Id. § 12181(9).

86.   When an entity can demonstrate that removal of a barrier is not readily achievable, a failure to make goods, services, facilities, or accommodations available through alternative methods is also specifically prohibited if these methods are readily achievable. Id. § 12182(b)(2)(A)(v).

87.   Here, Rush alleges that the Office Depot Defendants can easily remove the architectural barriers at the Office Depot Facility without much

1    difficulty or expense, and that the Office Depot Defendants violated the ADA by

2    failing to remove those barriers, when it was readily achievable to do so.

3       88.   In the alternative, if it was not "readily achievable" for the Office

4    Depot Defendants to remove the Office Depot Facility's barriers, then the Office

5    Depot Defendants violated the ADA by failing to make the required services

6    available through alternative methods, which are readily achievable.

7                Failure to Design and Construct an Accessible Facility

8       89.   On information and belief, the Office Depot Facility was designed

9    or constructed (or both) after January 26, 1992—independently triggering access

10   requirements under Title III of the ADA.

11      90.   The ADA also prohibits designing and constructing facilities for

12   first occupancy after January 26, 1993, that aren't readily accessible to, and

13   usable by, individuals with disabilities when it was structurally practicable to do

14   so. 42 U.S.C. § 12183(a)(1).

15      91.   Here, the Office Depot Defendants violated the ADA by designing

16   or constructing (or both) the Office Depot Facility in a manner that was not

17   readily accessible to the physically disabled public—including Rush—when it

18   was structurally practical to do so.[7]

19                Failure to Make an Altered Facility Accessible

20      92.   On information and belief, the Office Depot Facility was modified

21   after January 26, 1992, independently triggering access requirements under the

22   ADA.

23      93.   The ADA also requires that facilities altered in a manner that affects

24   (or could affect) its usability must be made readily accessible to individuals with

25   disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2).  Altering

26   an area that contains a facility's primary function also requires adding making

27

28   _____
     [7] Nothing within this Complaint should be construed as an allegation that plaintiff is bringing this action as a
        private attorney general under either state or federal statutes.
     *Rush v. Village Walk Retail, LP, et al.*
     Plaintiff's Complaint

1  the paths of travel, bathrooms, telephones, and drinking fountains serving that
2  area accessible to the maximum extent feasible. Id.

3      94.   Here, the Office Depot Defendants altered the Office Depot Facility
4  in a manner that violated the ADA and was not readily accessible to the
5  physically disabled public—including Rush—to the maximum extent feasible.

6              Failure to Modify Existing Policies and Procedures

7      95.   The ADA also requires reasonable modifications in policies,
8  practices, or procedures, when necessary to afford such goods, services,
9  facilities, or accommodations to individuals with disabilities, unless the entity
10 can demonstrate that making such modifications would fundamentally alter their
11 nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

12     96.   Here, the Office Depot Defendants violated the ADA by failing to
13 make reasonable modifications in policies, practices, or procedures at the Office
14 Depot Facility, when these modifications were necessary to afford (and would
15 not fundamentally alter the nature of) these goods, services, facilities, or
16 accommodations.

17     97.   Rush seeks all relief available under the ADA (i.e., injunctive relief,
18 attorney fees, costs, legal expense) for these aforementioned violations. 42
19 U.S.C. § 12205.

20     98.   Rush also seeks a finding from this Court (i.e., declaratory relief)
21 that the Office Depot Defendants violated the ADA in order to pursue damages
22 under California's Unruh Civil Rights Act or Disabled Persons Act.

23                      XI.   SIXTH CLAIM

24                    **Disabled Persons Act**

25                   (The Office Depot Facility)

26     99.   Rush incorporates the allegations contained in paragraphs 1 through
27 44 for this claim.

28

*Rush v. Village Walk Retail, LP, et al.*
Plaintiff's Complaint

100.   California Civil Code § 54 states, in part, that: Individuals with disabilities have the same right as the general public to the full and free use of the streets, sidewalks, walkways, public buildings and facilities, and other public places.

101.   California Civil Code § 54.1 also states, in part, that: Individuals with disabilities shall be entitled to full and equal access to accommodations, facilities, telephone facilities, places of public accommodation, and other places to which the general public is invited.

102.   Both sections specifically incorporate (by reference) an individual's rights under the ADA. See Civil Code §§ 54(c) and 54.1(d).

103.   Here, the Office Depot Defendants discriminated against the physically disabled public—including Rush—by denying them full and equal access to the Office Depot Facility.   The Office Depot Defendants also violated Rush's rights under the ADA, and, therefore, infringed upon or violated (or both) Rush's rights under the Disabled Persons Act.

104.   For each offense of the Disabled Persons Act, Rush seeks actual damages (both general and special damages), statutory minimum damages of one thousand dollars ($1,000), declaratory relief, and any other remedy available under California Civil Code § 54.3.

105.   She also seeks to enjoin the Office Depot Defendants from violating the Disabled Persons Act (and ADA) under California Civil Code § 55, and to recover reasonable attorneys' fees and incurred under California Civil Code §§ 54.3 and 55.

## XII.   SEVENTH CLAIM

### Unruh Civil Rights Act

(The Office Depot Facility)

106.   Rush incorporates the allegations contained in paragraphs 1 through 44 for this claim.

*Rush v. Village Walk Retail, LP, et al.*
Plaintiff's Complaint

107.   California Civil Code § 51 states, in part, that: All persons within the jurisdiction of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

108.   California Civil Code § 51.5 also states, in part, that: No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person.

109.   California Civil Code § 51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

110.   The Office Depot Defendants' aforementioned acts and omissions denied the physically disabled public—including Rush—full and equal accommodations, advantages, facilities, privileges and services in a business establishment (because of their physical disability).

111.   These acts and omissions (including the ones that violate the ADA) denied, aided or incited a denial, or discriminated against Rush by violating the Unruh Act.

112.   Rush was damaged by the Office Depot Defendants' wrongful conduct, and seeks statutory minimum damages of four thousand dollars ($4,000) for each offense.

113.   Rush also seeks to enjoin the Office Depot Defendants from violating the Unruh Act (and ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code § 52(a).

## XIII.   EIGHTH CLAIM

### Denial of Full and Equal Access to Public Facilities

(The Office Depot Facility)

114.   Rush incorporates the allegations contained in paragraphs 1 through 44 for this claim.

115.  Health and Safety Code § 19955(a) states, in part, that: California public accommodations or facilities (built with private funds) shall adhere to the provisions of Government Code § 4450.

116.  Health and Safety Code § 19959 states, in part, that: Every existing (non-exempt) public accommodation constructed prior to July 1, 1970, which is altered or structurally repaired, is required to comply with this chapter.

117.  Rush alleges the Office Depot Facility is a public accommodation constructed, altered, or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code § 4450 (or both), and that the Office Depot Facility was not exempt under Health and Safety Code § 19956.

118.  The Office Depot Defendants' non-compliance with these requirements at the Office Depot Facility aggrieved (or potentially aggrieved) Rush and other persons with physical disabilities.  Accordingly, she seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

## XIV.  NINTH CLAIM

### Americans with Disabilities Act of 1990

Denial of "Full and Equal" Enjoyment and Use

(The Guitar Center Facility)

119.  Rush incorporates the allegations contained in paragraphs 1 through 44 for this claim.

120.  Title III of the ADA holds as a "general rule" that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment (or use) of goods, services, facilities, privileges, and accommodations offered by any person who owns, operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

121.  The Guitar Center Defendants discriminated against Rush by denying "full and equal enjoyment" and use of the goods, services, facilities,

*Rush v. Village Walk Retail, LP, et al.*
Plaintiff's Complaint

privileges or accommodations of the Guitar Center Facility during each visit and each incident of deterrence.

### Failure to Remove Architectural Barriers in an Existing Facility

122. The ADA specifically prohibits failing to remove architectural barriers, which are structural in nature, in existing facilities where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). The term "readily achievable" is defined as "easily accomplishable and able to be carried out without much difficulty or expense." Id. § 12181(9).

123. When an entity can demonstrate that removal of a barrier is not readily achievable, a failure to make goods, services, facilities, or accommodations available through alternative methods is also specifically prohibited if these methods are readily achievable. Id. § 12182(b)(2)(A)(v).

124. Here, Rush alleges that the Guitar Center Defendants can easily remove the architectural barriers at the Guitar Center Facility without much difficulty or expense, and that the Guitar Center Defendants violated the ADA by failing to remove those barriers, when it was readily achievable to do so.

125. In the alternative, if it was not "readily achievable" for the Guitar Center Defendants to remove the Guitar Center Facility's barriers, then the Guitar Center Defendants violated the ADA by failing to make the required services available through alternative methods, which are readily achievable.

### Failure to Design and Construct an Accessible Facility

126. On information and belief, the Guitar Center Facility was designed or constructed (or both) after January 26, 1992—independently triggering access requirements under Title III of the ADA.

127. The ADA also prohibits designing and constructing facilities for first occupancy after January 26, 1993, that aren't readily accessible to, and usable by, individuals with disabilities when it was structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

*Rush v. Village Walk Retail, LP, et al.*
Plaintiff's Complaint

128.   Here, the Guitar Center Defendants violated the ADA by designing or constructing (or both) the Guitar Center Facility in a manner that was not readily accessible to the physically disabled public—including Rush—when it was structurally practical to do so.[8]

### Failure to Make an Altered Facility Accessible

129.   On information and belief, the Guitar Center Facility was modified after January 26, 1992, independently triggering access requirements under the ADA.

130.   The ADA also requires that facilities altered in a manner that affects (or could affect) its usability must be made readily accessible to individuals with disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2).  Altering an area that contains a facility's primary function also requires adding making the paths of travel, bathrooms, telephones, and drinking fountains serving that area accessible to the maximum extent feasible. Id.

131.   Here, the Guitar Center Defendants altered the Guitar Center Facility in a manner that violated the ADA and was not readily accessible to the physically disabled public—including Rush—to the maximum extent feasible.

### Failure to Modify Existing Policies and Procedures

132.   The ADA also requires reasonable modifications in policies, practices, or procedures, when necessary to afford such goods, services, facilities, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

133.   Here, the Guitar Center Defendants violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the Guitar Center Facility, when these modifications were necessary to afford (and would

---

[8]   Nothing within this Complaint should be construed as an allegation that plaintiff is bringing this action as a private attorney general under either state or federal statutes.
*Rush v. Village Walk Retail, LP, et al.*
Plaintiff's Complaint

not fundamentally alter the nature of) these goods, services, facilities, or accommodations.

134.   Rush seeks all relief available under the ADA (*i.e.*, injunctive relief, attorney fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

135.   Rush also seeks a finding from this Court (*i.e.,* declaratory relief) that the Guitar Center Defendants violated the ADA in order to pursue damages under California's Unruh Civil Rights Act or Disabled Persons Act.

XV.   TENTH CLAIM

**Disabled Persons Act**

(The Guitar Center Facility)

136.   Rush incorporates the allegations contained in paragraphs 1 through 44 for this claim.

137.   California Civil Code § 54 states, in part, that: Individuals with disabilities have the same right as the general public to the full and free use of the streets, sidewalks, walkways, public buildings and facilities, and other public places.

138.   California Civil Code § 54.1 also states, in part, that: Individuals with disabilities shall be entitled to full and equal access to accommodations, facilities, telephone facilities, places of public accommodation, and other places to which the general public is invited.

139.   Both sections specifically incorporate (by reference) an individual's rights under the ADA. See Civil Code §§ 54(c) and 54.1(d).

140.   Here, the Guitar Center Defendants discriminated against the physically disabled public—including Rush—by denying them full and equal access to the Guitar Center Facility.  The Guitar Center Defendants also violated Rush's rights under the ADA, and, therefore, infringed upon or violated (or both) Rush's rights under the Disabled Persons Act.

*Rush v. Village Walk Retail, LP, et al.*
Plaintiff's Complaint

Page 32

141.   For each offense of the Disabled Persons Act, Rush seeks actual damages (both general and special damages), statutory minimum damages of one thousand dollars ($1,000), declaratory relief, and any other remedy available under California Civil Code § 54.3.

142.   She also seeks to enjoin the Guitar Center Defendants from violating the Disabled Persons Act (and ADA) under California Civil Code § 55, and to recover reasonable attorneys' fees and incurred under California Civil Code §§ 54.3 and 55.

## XVI.  ELEVENTH CLAIM

### Unruh Civil Rights Act

(The Guitar Center Facility)

143.   Rush incorporates the allegations contained in paragraphs 1 through 44 for this claim.

144.   California Civil Code § 51 states, in part, that: All persons within the jurisdiction of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

145.   California Civil Code § 51.5 also states, in part, that: No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person.

146.   California Civil Code § 51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

147.   The Guitar Center Defendants' aforementioned acts and omissions denied the physically disabled public—including Rush—full and equal accommodations, advantages, facilities, privileges and services in a business establishment (because of their physical disability).

148.   These acts and omissions (including the ones that violate the ADA) denied, aided or incited a denial, or discriminated against Rush by violating the Unruh Act.

149.   Rush was damaged by the Guitar Center Defendants' wrongful conduct, and seeks statutory minimum damages of four thousand dollars ($4,000) for each offense.

150.   Rush also seeks to enjoin the Guitar Center Defendants from violating the Unruh Act (and ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code § 52(a).

## XVII. TWELVTH CLAIM

**Denial of Full and Equal Access to Public Facilities**

(The Guitar Center Facility)

151.   Rush incorporates the allegations contained in paragraphs 1 through 44 for this claim.

152.   Health and Safety Code § 19955(a) states, in part, that: California public accommodations or facilities (built with private funds) shall adhere to the provisions of Government Code § 4450.

153.   Health and Safety Code § 19959 states, in part, that: Every existing (non-exempt) public accommodation constructed prior to July 1, 1970, which is altered or structurally repaired, is required to comply with this chapter.

154.   Rush alleges the Guitar Center Facility is a public accommodation constructed, altered, or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code § 4450 (or both), and that the Guitar Center Facility was not exempt under Health and Safety Code § 19956.

155.   The Guitar Center Defendants' non-compliance with these requirements at the Guitar Center Facility aggrieved (or potentially aggrieved) Rush and other persons with physical disabilities.   Accordingly, she seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

*Rush v. Village Walk Retail, LP, et al.*
Plaintiff's Complaint

Page 34

## XVIII.    THIRTEENTH CLAIM

**Americans with Disabilities Act of 1990**

Denial of "Full and Equal" Enjoyment and Use

(The Bed Bath & Beyond Facility)

156.  Rush incorporates the allegations contained in paragraphs 1 through 44 for this claim.

157.  Title III of the ADA holds as a "general rule" that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment (or use) of goods, services, facilities, privileges, and accommodations offered by any person who owns, operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

158.  The Bed Bath & Beyond Defendants discriminated against Rush by denying "full and equal enjoyment" and use of the goods, services, facilities, privileges or accommodations of the Bed Bath & Beyond Facility during each visit and each incident of deterrence.

Failure to Remove Architectural Barriers in an Existing Facility

159.  The ADA specifically prohibits failing to remove architectural barriers, which are structural in nature, in existing facilities where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv).   The term "readily achievable" is defined as "easily accomplishable and able to be carried out without much difficulty or expense." Id. § 12181(9).

160.  When an entity can demonstrate that removal of a barrier is not readily achievable, a failure to make goods, services, facilities, or accommodations available through alternative methods is also specifically prohibited if these methods are readily achievable. Id. § 12182(b)(2)(A)(v).

161.  Here, Rush alleges that the Bed Bath & Beyond Defendants can easily remove the architectural barriers at the Bed Bath & Beyond Facility without much difficulty or expense, and that the Bed Bath & Beyond Defendants

1  violated the ADA by failing to remove those barriers, when it was readily
2  achievable to do so.

3      162.  In the alternative, if it was not "readily achievable" for the Bed Bath
4  & Beyond Defendants to remove the Bed Bath & Beyond Facility's barriers, then
5  the Bed Bath & Beyond Defendants violated the ADA by failing to make the
6  required services available through alternative methods, which are readily
7  achievable.

8              Failure to Design and Construct an Accessible Facility

9      163.  On information and belief, the Bed Bath & Beyond Facility was
10  designed or constructed (or both) after January 26, 1992—independently
11  triggering access requirements under Title III of the ADA.

12     164.  The ADA also prohibits designing and constructing facilities for
13  first occupancy after January 26, 1993, that aren't readily accessible to, and
14  usable by, individuals with disabilities when it was structurally practicable to do
15  so. 42 U.S.C. § 12183(a)(1).

16     165.  Here, the Bed Bath & Beyond Defendants violated the ADA by
17  designing or constructing (or both) the Bed Bath & Beyond Facility in a manner
18  that was not readily accessible to the physically disabled public—including
19  Rush—when it was structurally practical to do so.[9]

20              Failure to Make an Altered Facility Accessible

21     166.  On information and belief, the Bed Bath & Beyond Facility was
22  modified after January 26, 1992, independently triggering access requirements
23  under the ADA.

24     167.  The ADA also requires that facilities altered in a manner that affects
25  (or could affect) its usability must be made readily accessible to individuals with
26  disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2).  Altering

27

28  [9]  Nothing within this Complaint should be construed as an allegation that plaintiff is bringing this action as a
     private attorney general under either state or federal statutes.
     *Rush v. Village Walk Retail, LP, et al.*
     Plaintiff's Complaint

                                    Page 36

an area that contains a facility's primary function also requires adding making the paths of travel, bathrooms, telephones, and drinking fountains serving that area accessible to the maximum extent feasible. Id.

168. Here, the Bed Bath & Beyond Defendants altered the Bed Bath & Beyond Facility in a manner that violated the ADA and was not readily accessible to the physically disabled public—including Rush—to the maximum extent feasible.

### Failure to Modify Existing Policies and Procedures

169. The ADA also requires reasonable modifications in policies, practices, or procedures, when necessary to afford such goods, services, facilities, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

170. Here, the Bed Bath & Beyond Defendants violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the Bed Bath & Beyond Facility, when these modifications were necessary to afford (and would not fundamentally alter the nature of) these goods, services, facilities, or accommodations.

171. Rush seeks all relief available under the ADA (*i.e.*, injunctive relief, attorney fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

172. Rush also seeks a finding from this Court (*i.e.,* declaratory relief) that the Bed Bath & Beyond Defendants violated the ADA in order to pursue damages under California's Unruh Civil Rights Act or Disabled Persons Act.

## XIX.  FOURTEENTH CLAIM

### Disabled Persons Act

(The Bed Bath & Beyond Facility)

173.  Rush incorporates the allegations contained in paragraphs 1 through 44 for this claim.

174.  California Civil Code § 54 states, in part, that: Individuals with disabilities have the same right as the general public to the full and free use of the streets, sidewalks, walkways, public buildings and facilities, and other public places.

175.  California Civil Code § 54.1 also states, in part, that: Individuals with disabilities shall be entitled to full and equal access to accommodations, facilities, telephone facilities, places of public accommodation, and other places to which the general public is invited.

176.  Both sections specifically incorporate (by reference) an individual's rights under the ADA. See Civil Code §§ 54(c) and 54.1(d).

177.  Here, the Bed Bath & Beyond Defendants discriminated against the physically disabled public—including Rush—by denying them full and equal access to the Bed Bath & Beyond Facility. The Bed Bath & Beyond Defendants also violated Rush's rights under the ADA, and, therefore, infringed upon or violated (or both) Rush's rights under the Disabled Persons Act.

178.  For each offense of the Disabled Persons Act, Rush seeks actual damages (both general and special damages), statutory minimum damages of one thousand dollars ($1,000), declaratory relief, and any other remedy available under California Civil Code § 54.3.

179.  She also seeks to enjoin the Bed Bath & Beyond Defendants from violating the Disabled Persons Act (and ADA) under California Civil Code § 55, and to recover reasonable attorneys' fees and incurred under California Civil Code §§ 54.3 and 55.

*Rush v. Village Walk Retail, LP, et al.*
Plaintiff's Complaint

## XX.   FIFTEENTH CLAIM

### Unruh Civil Rights Act

(The Bed Bath & Beyond Facility)

180.   Rush incorporates the allegations contained in paragraphs 1 through 44 for this claim.

181.   California Civil Code § 51 states, in part, that: All persons within the jurisdiction of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

182.   California Civil Code § 51.5 also states, in part, that: No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person.

183.   California Civil Code § 51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

184.   The Bed Bath & Beyond Defendants' aforementioned acts and omissions denied the physically disabled public—including Rush—full and equal accommodations, advantages, facilities, privileges and services in a business establishment (because of their physical disability).

185.   These acts and omissions (including the ones that violate the ADA) denied, aided or incited a denial, or discriminated against Rush by violating the Unruh Act.

186.   Rush was damaged by the Bed Bath & Beyond Defendants' wrongful conduct, and seeks statutory minimum damages of four thousand dollars ($4,000) for each offense.

187.   Rush also seeks to enjoin the Bed Bath & Beyond Defendants from violating the Unruh Act (and ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code § 52(a).

## XXI.  SIXTEENTH CLAIM

**Denial of Full and Equal Access to Public Facilities**

(The Bed Bath & Beyond Facility)

188.  Rush incorporates the allegations contained in paragraphs 1 through 44 for this claim.

189.  Health and Safety Code § 19955(a) states, in part, that: California public accommodations or facilities (built with private funds) shall adhere to the provisions of Government Code § 4450.

190.  Health and Safety Code § 19959 states, in part, that: Every existing (non-exempt) public accommodation constructed prior to July 1, 1970, which is altered or structurally repaired, is required to comply with this chapter.

191.  Rush alleges the Bed Bath & Beyond Facility is a public accommodation constructed, altered, or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code § 4450 (or both), and that the Bed Bath & Beyond Facility was not exempt under Health and Safety Code § 19956.

192.  The Bed Bath & Beyond Defendants' non-compliance with these requirements at the Bed Bath & Beyond Facility aggrieved (or potentially aggrieved) Rush and other persons with physical disabilities.  Accordingly, she seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

## XXII. TWENTY-FIRST CLAIM

**Americans with Disabilities Act of 1990**

Denial of "Full and Equal" Enjoyment and Use

(The Babies 'r' Us Facility)

193.  Rush incorporates the allegations contained in paragraphs 1 through 44 for this claim.

*Rush v. Village Walk Retail, LP, et al.*
Plaintiff's Complaint

194.   Title III of the ADA holds as a "general rule" that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment (or use) of goods, services, facilities, privileges, and accommodations offered by any person who owns, operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

195.   The Babies 'r' Us Defendants discriminated against Rush by denying "full and equal enjoyment" and use of the goods, services, facilities, privileges or accommodations of the Babies 'r' Us Facility during each visit and each incident of deterrence.

<u>Failure to Remove Architectural Barriers in an Existing Facility</u>

196.   The ADA specifically prohibits failing to remove architectural barriers, which are structural in nature, in existing facilities where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv).   The term "readily achievable" is defined as "easily accomplishable and able to be carried out without much difficulty or expense." <u>Id.</u> § 12181(9).

197.   When an entity can demonstrate that removal of a barrier is not readily achievable, a failure to make goods, services, facilities, or accommodations available through alternative methods is also specifically prohibited if these methods are readily achievable. <u>Id.</u> § 12182(b)(2)(A)(v).

198.   Here, Rush alleges that the Babies 'r' Us Defendants can easily remove the architectural barriers at the Babies 'r' Us Facility without much difficulty or expense, and that the Babies 'r' Us Defendants violated the ADA by failing to remove those barriers, when it was readily achievable to do so.

199.   In the alternative, if it was not "readily achievable" for the Babies 'r' Us Defendants to remove the Babies 'r' Us Facility's barriers, then the Babies 'r' Us Defendants violated the ADA by failing to make the required services available through alternative methods, which are readily achievable.

*Rush v. Village Walk Retail, LP, et al.*
Plaintiff's Complaint

1    ## Failure to Design and Construct an Accessible Facility

2    200.   On information and belief, the Babies 'r' Us Facility was designed

3    or constructed (or both) after January 26, 1992—independently triggering access

4    requirements under Title III of the ADA.

5    201.   The ADA also prohibits designing and constructing facilities for

6    first occupancy after January 26, 1993, that aren't readily accessible to, and

7    usable by, individuals with disabilities when it was structurally practicable to do

8    so. 42 U.S.C. § 12183(a)(1).

9    202.   Here, the Babies 'r' Us Defendants violated the ADA by designing

10   or constructing (or both) the Babies 'r' Us Facility in a manner that was not

11   readily accessible to the physically disabled public—including Rush—when it

12   was structurally practical to do so.[10]

13   ## Failure to Make an Altered Facility Accessible

14   203.   On information and belief, the Babies 'r' Us Facility was modified

15   after January 26, 1992, independently triggering access requirements under the

16   ADA.

17   204.   The ADA also requires that facilities altered in a manner that affects

18   (or could affect) its usability must be made readily accessible to individuals with

19   disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2).  Altering

20   an area that contains a facility's primary function also requires adding making

21   the paths of travel, bathrooms, telephones, and drinking fountains serving that

22   area accessible to the maximum extent feasible. Id.

23   205.   Here, the Babies 'r' Us Defendants altered the Babies 'r' Us Facility

24   in a manner that violated the ADA and was not readily accessible to the

25   physically disabled public—including Rush—to the maximum extent feasible.

26

27

28   [10]   Nothing within this Complaint should be construed as an allegation that plaintiff is bringing this action as a
     private attorney general under either state or federal statutes.

     *Rush v. Village Walk Retail, LP, et al.*
     Plaintiff's Complaint

     Page 42

<u>Failure to Modify Existing Policies and Procedures</u>

206. The ADA also requires reasonable modifications in policies, practices, or procedures, when necessary to afford such goods, services, facilities, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

207. Here, the Babies 'r' Us Defendants violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the Babies 'r' Us Facility, when these modifications were necessary to afford (and would not fundamentally alter the nature of) these goods, services, facilities, or accommodations.

208. Rush seeks all relief available under the ADA (*i.e.*, injunctive relief, attorney fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

209. Rush also seeks a finding from this Court (*i.e.,* declaratory relief) that the Babies 'r' Us Defendants violated the ADA in order to pursue damages under California's Unruh Civil Rights Act or Disabled Persons Act.

XXIII.      TWENTY-SECOND CLAIM

**Disabled Persons Act**

(The Babies 'r' Us Facility)

210. Rush incorporates the allegations contained in paragraphs 1 through 44 for this claim.

211. California Civil Code § 54 states, in part, that: Individuals with disabilities have the same right as the general public to the full and free use of the streets, sidewalks, walkways, public buildings and facilities, and other public places.

212. California Civil Code § 54.1 also states, in part, that: Individuals with disabilities shall be entitled to full and equal access to accommodations,

facilities, telephone facilities, places of public accommodation, and other places to which the general public is invited.

213. Both sections specifically incorporate (by reference) an individual's rights under the ADA. See Civil Code §§ 54(c) and 54.1(d).

214. Here, the Babies 'r' Us Defendants discriminated against the physically disabled public—including Rush—by denying them full and equal access to the Babies 'r' Us Facility. The Babies 'r' Us Defendants also violated Rush's rights under the ADA, and, therefore, infringed upon or violated (or both) Rush's rights under the Disabled Persons Act.

215. For each offense of the Disabled Persons Act, Rush seeks actual damages (both general and special damages), statutory minimum damages of one thousand dollars ($1,000), declaratory relief, and any other remedy available under California Civil Code § 54.3.

216. She also seeks to enjoin the Babies 'r' Us Defendants from violating the Disabled Persons Act (and ADA) under California Civil Code § 55, and to recover reasonable attorneys' fees and incurred under California Civil Code §§ 54.3 and 55.

### XXIV.    TWENTY-THIRD CLAIM

### **Unruh Civil Rights Act**

(The Babies 'r' Us Facility)

217. Rush incorporates the allegations contained in paragraphs 1 through 44 for this claim.

218. California Civil Code § 51 states, in part, that: All persons within the jurisdiction of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

219.   California Civil Code § 51.5 also states, in part, that: No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person.

220.   California Civil Code § 51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

221.   The Babies 'r' Us Defendants' aforementioned acts and omissions denied the physically disabled public—including Rush—full and equal accommodations, advantages, facilities, privileges and services in a business establishment (because of their physical disability).

222.   These acts and omissions (including the ones that violate the ADA) denied, aided or incited a denial, or discriminated against Rush by violating the Unruh Act.

223.   Rush was damaged by the Babies 'r' Us Defendants' wrongful conduct, and seeks statutory minimum damages of four thousand dollars ($4,000) for each offense.

224.   Rush also seeks to enjoin the Babies 'r' Us Defendants from violating the Unruh Act (and ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code § 52(a).

### XXV. TWENTY-FOURTH CLAIM

**Denial of Full and Equal Access to Public Facilities**

(The Babies 'r' Us Facility)

225.   Rush incorporates the allegations contained in paragraphs 1 through 44 for this claim.

226.   Health and Safety Code § 19955(a) states, in part, that: California public accommodations or facilities (built with private funds) shall adhere to the provisions of Government Code § 4450.

227. Health and Safety Code § 19959 states, in part, that: Every existing (non-exempt) public accommodation constructed prior to July 1, 1970, which is altered or structurally repaired, is required to comply with this chapter.

228. Rush alleges the Babies 'r' Us Facility is a public accommodation constructed, altered, or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code § 4450 (or both), and that the Babies 'r' Us Facility was not exempt under Health and Safety Code § 19956.

229. The Babies 'r' Us Defendants' non-compliance with these requirements at the Babies 'r' Us Facility aggrieved (or potentially aggrieved) Rush and other persons with physical disabilities. Accordingly, she seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

## XXVI.    PRAYER FOR RELIEF

WHEREFORE, Rush prays judgment against the Sports Authority Defendants for:

1. Injunctive relief, preventive relief, or any other relief the Court deems proper.

2. Declaratory relief that the Sports Authority Defendants violated the ADA for the purposes of Unruh Act or Disabled Persons Act damages.

3. Statutory minimum damages under either sections 52(a) or 54.3(a) of the California Civil Code (but not both) according to proof.

4. Attorneys' fees, litigation expenses, and costs of suit.[11]

5. Interest at the legal rate from the date of the filing of this action.

---

[11] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.
*Rush v. Village Walk Retail, LP, et al.*
Plaintiff's Complaint

1

XXVII.    PRAYER FOR RELIEF

2      WHEREFORE, Rush prays judgment against the Office Depot Defendants

3  for:

4  1.    Injunctive relief, preventive relief, or any other relief the Court deems

5  proper.

6  2.    Declaratory relief that the Office Depot Defendants violated the ADA for

7  the purposes of Unruh Act or Disabled Persons Act damages.

8  3.    Statutory minimum damages under either sections 52(a) or 54.3(a) of the

9  California Civil Code (but not both) according to proof.

10  4.    Attorneys' fees, litigation expenses, and costs of suit.[12]

11  5.    Interest at the legal rate from the date of the filing of this action.

12

XXVIII.    PRAYER FOR RELIEF

13  WHEREFORE, Rush prays judgment against the Guitar Center Defendants for:

14  1.    Injunctive relief, preventive relief, or any other relief the Court deems

15  proper.

16  2.    Declaratory relief that the Guitar Center Defendants violated the ADA for

17  the purposes of Unruh Act or Disabled Persons Act damages.

18  3.    Statutory minimum damages under either sections 52(a) or 54.3(a) of the

19  California Civil Code (but not both) according to proof.

20  4.    Attorneys' fees, litigation expenses, and costs of suit.[13]

21  5.    Interest at the legal rate from the date of the filing of this action.

22

23

24

25

26

27

28
_____

[12]    This includes attorneys' fees under California Code of Civil Procedure § 1021.5.
[13]    This includes attorneys' fees under California Code of Civil Procedure § 1021.5.
*Rush v. Village Walk Retail, LP, et al.*
Plaintiff's Complaint

Page 47

## XXIX.   PRAYER FOR RELIEF

WHEREFORE, Rush prays judgment against the Bed Bath & Beyond Defendants for:

1.    Injunctive relief, preventive relief, or any other relief the Court deems proper.

2.    Declaratory relief that the Bed Bath & Beyond Defendants violated the ADA for the purposes of Unruh Act or Disabled Persons Act damages.

3.    Statutory minimum damages under either sections 52(a) or 54.3(a) of the California Civil Code (but not both) according to proof.

4.    Attorneys' fees, litigation expenses, and costs of suit.[14]

5.    Interest at the legal rate from the date of the filing of this action.

## XXX. PRAYER FOR RELIEF

WHEREFORE, Rush prays judgment against the Babies 'r' Us Defendants for:

1.    Injunctive relief, preventive relief, or any other relief the Court deems proper.

2.    Declaratory relief that the Babies 'r' Us Defendants violated the ADA for the purposes of Unruh Act or Disabled Persons Act damages.

3.    Statutory minimum damages under either sections 52(a) or 54.3(a) of the California Civil Code (but not both) according to proof.

4.    Attorneys' fees, litigation expenses, and costs of suit.[15]

5.    Interest at the legal rate from the date of the filing of this action.

DATED: January 26, 2011        DISABLED ADVOCACY GROUP, APLC

LYNN HUBBARD, III
Attorney for Plaintiff, Sandi Rush

---

[14]   This includes attorneys' fees under California Code of Civil Procedure § 1021.5.
[15]   This includes attorneys' fees under California Code of Civil Procedure § 1021.5.
*Rush v. Village Walk Retail, LP, et al.*
Plaintiff's Complaint

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge John F. Walter and the assigned discovery Magistrate Judge is Alicia G. Rosenberg.

The case number on all documents filed with the Court should read as follows:

## CV11- 900 JFW (AGRx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| **[X] Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | **[ ] Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | **[ ] Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

SANDI RUSH,

PLAINTIFF(S)

v.

SEE ATTACHED SHEET

DEFENDANT(S).

CASE NUMBER

**CV 11 - 00900** JFW (AGRx)

**SUMMONS**

TO:   DEFENDANT(S): _____

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐_____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney,  LYNN HUBBARD, III_____, whose address is  Disabled Advocacy Group, APLC   12 Williamsburg Lane, Chico, CA  95926_____.  If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: ___JAN 2 8 2011___

By _Adriene Morris_

Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

CV-01A (12/07)                                    **SUMMONS**